# **EXHIBIT C**

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                    4/11/2014

                                                              1

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2

 3   FABIAN EDWARDS, KENVILLE EDWARDS,  :
     KEITHMICHAEL MITTO and             :   CASE NO.
 4   ELIZABETH EDWARDS                  :   3:13-CV-00878-WWE
                                        :
 5   vs.                                :
                                        :
 6   CITY OF HARTFORD, JAMES ROVELLA,   :
     OFFICER MATTHEW CORNELL,           :
 7   OFFICER CHRISTOPHER MAY and        :
     OFFICER ERIC BAUMGARTEN            :   APRIL 11, 2014
 8

 9          DEPOSITION OF:  ELIZABETH EDWARDS

10
     APPEARANCES:
11
     EGAN, DONAHUE, VAN DYKE & FALSEY, LLP
12        Attorneys for the Plaintiffs
          24 Arapahoe Road
13        West Hartford, CT 06107
          (860) 232-7200
14   BY:  PETER M. VAN DYKE, ESQ.
          pvd@eddf-law.com
15
     HOWD & LUDORF, LLC
16        Attorneys for Defendants Cornell, May, Baumgarten
          65 Wethersfield Avenue
17        Hartford, CT 06114
          (860) 249-1361
18   BY:  ALAN R. DEMBICZAK, ESQ.
          adembiczak@hl-law.com
19
     OFFICE OF CORPORATION COUNSEL
20        Attorneys for Defendant Hartford, Rovella
          550 Main Street
21        Hartford, CT 06103
          (860) 757-9700
22   BY:  NATHALIE FEOLA-GUERRIERI, ESQ.
          feoln001@hartford.gov
23
                   Christine E. Borrelli
24              Connecticut License No. 117
                 Registered Merit Reporter
25
```

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 3 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                    4/11/2014
                                                              2

1    . . . . . . Deposition of ELIZABETH EDWARDS, a Plaintiff,
2    taken on behalf of the Defendants, in the herein before
3    entitled action, pursuant to the Connecticut Practice Book,
4    before Christine E. Borrelli, duly qualified Notary Public
5    in and for the State of Connecticut, held at the Law Offices
6    of Howd & Ludorf, LLC, 65 Wethersfield Avenue, Hartford,
7    Connecticut, commencing at 1:25 p.m. on Friday, April 11,
8    2014.
9
10              S T I P U L A T I O N S
11
12       It is hereby stipulated and agreed by and among counsel
13   for the respective parties that all formalities in
14   connection with the taking of this deposition, including
15   time, place, sufficiency of notice, and the authority of the
16   officer before whom it is being taken may be and are hereby
17   waived.
18       It is further stipulated and agreed that objections
19   other than as to form are reserved to the time of trial.
20       It is further stipulated and agreed that the reading
21   and signing of the deposition transcript by the deponent is
22   hereby not waived.
23       It is further stipulated and agreed that the proof of
24   the qualifications of the Notary Public before whom the
25   deposition is being taken is hereby waived.

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 4 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                    4/11/2014
                                                                    31

1   A.   No.
2   Q.   Now, in this case we are dealing with three
3   Hartford police officers.  Their names are Matthew Cornell,
4   Christopher May and Eric Baumgarten.  Have you ever dealt
5   with those officers before this incident?
6   A.   No.
7   Q.   Have you ever dealt with those officers since this
8   incident?
9   A.   No.
10  Q.   Now, as a result of this incident, did you sustain
11  any personal injuries, meaning like injuries to your body?
12  A.   No.  No injuries to my body.  All I know is that
13  when they were pushing me, one pushed me -- I don't know his
14  name or anything -- to go.  I was stumbling and all that.
15  Apart from that, the pepper spray and the taser thing that
16  they tased me with, that shocking thing.
17  Q.   So, you got tased --
18  A.   Yes, and paper spray.
19  Q.   -- and you had some of the pepper spray.
20  A.   Yes.  They sprayed it like this, so it came mostly
21  all over, you know.
22  Q.   So, with the pepper spray, did you feel the
23  burning in your eyes?
24  A.   Yes, it burned.
25  Q.   And how long did that last?

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                    4/11/2014

32

1   A.   It lasted for a good while, but even when I was
2   done at the hospital -- because I have never experienced it
3   before -- so even when I went down there and the doctor, you
4   know, attempt to, like, put something, that was -- honestly,
5   I was scared because after what happened with the police, I
6   didn't even want nobody to touch me.  So, my pastor came
7   down, and when my pastor was there, that's when I allowed
8   them to -- she pretty much was going to put something in my
9   eyes afterwards and she put -- the pepper spray was all like
10  this.
11      Q.   You said your pastor came down to the hospital?
12      A.   Yeah.  I called him, and he came.
13      Q.   What is your pastor's name?
14      A.   Pastor Wolliston.
15      Q.   So, obviously, you had the results of the pepper
16  spray --
17      A.   Yeah.
18      Q.   -- the burning.  How long did that last, just that
19  day?
20      A.   No.  It lasted until the other day and even
21  then --
22      Q.   Until when?
23      A.   The next day.
24      Q.   And then after the next day, in the following day,
25  did it go away?

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 6 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                    4/11/2014
                                                              33

1  A. Yeah. It went away, but it was in my hair --
2  sorry to laugh. It was in my hair, and then I went to wash
3  my hair, and then I feel a burning come down. So, it was in
4  my hair, but it's in my -- more to the side of my face, and
5  they taser me.
6  Q. So, when you say they tasered you, you're pointing
7  to your left side --
8  A. Yes.
9  Q. -- like your rib area?
10 A. Yes.
11 Q. That's where they tased you?
12 A. Yes. I feel that shocking thing.
13 Q. Is it fair to say that shock that you felt, that's
14 when they were tasing you. Correct?
15 A. Yes.
16 Q. And after they were done tasing you, did you still
17 feel that shock?
18 A. I feel that -- you know that funny feeling that
19 sometimes like it just kind of jump? That's all. But, you
20 know, apart from that, they didn't hit me.
21 Q. So, I'm just focusing on this tasing. After the
22 incident, did you still have problems with the area that
23 they tased you, or was it just that day?
24 A. It was that day that they shot me. I feel the
25 shot, but apart from that, only sometimes I feel that

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 7 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                    4/11/2014
                                                                    34

1  jumping feeling.  You know like you would say, like when you
2  have a baby.
3       Q.   Okay.
4       A.   Well, it's like that, but I don't want to relate
5  it to it.  I don't want to relate it to it because, you
6  know -- yeah, I don't want to do that.
7       Q.   So, you're saying sometimes you have a jumping
8  feeling, but you don't know if it's related to the tasing?
9       A.   Right.  Doing that, I'm going to tell a lie if I'm
10 going to say yes, it's the taser that is doing that.
11      Q.   Fair enough.  Okay.  On the date of this incident,
12 June 14, 2012, did you own a cell phone?
13      A.   Yes.
14      Q.   On the date of the incident, did you take any
15 video, audio or photographs with your cell phone or with
16 anything else?
17      A.   No.  I didn't have no time for that.
18      Q.   Were you aware if anyone else took any video,
19 audio or photographs with a cell phone or any kind of
20 recording device?
21      A.   Not to my knowledge, apart from people that were,
22 you know, having their phones out.  I don't remember that
23 part.
24      Q.   Do you remember after this incident speaking with
25 a reporter?

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 8 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                 4/11/2014
                                                           41

1   A.   As I mention earlier on, I was at my kitchen sink.
2   I saw Romeo, which is Fabian pass the window. I said, oh,
3   he's from work, you know. And then I finish doing what I'm
4   doing. I didn't hear nothing because I don't know what is
5   happening outside. I didn't hear anything, so that's when I
6   went around now to go to the front door to go trouble him.
7   So, when I was about to go trouble him because I saw, you
8   know, him, the police car, and I saw him and the police at
9   the fence. And I went to open and I said, you know, I said
10  Romeo, and then the police was there, cursing some whatever
11  word, and then I heard when Romeo said to him, You don't
12  intimidate me by doing that. And when Romeo said to him,
13  you don't intimidate me by doing that, the both policemen
14  started to come around the fence. So, when they started to
15  come around, I said Romeo, get in the house. And I said
16  come inside the house. He went inside the house, and I
17  pushed him in. And then I turned back -- at this time now,
18  they came and they said, Give me your I.D. He came up on
19  me. Give me your I.D. I turn to Romeo and I said, Give me
20  your I.D. to give to him, and that's when everything happen
21  because the police actually pushed me out of the -- that's
22  the time when they taser me to get to Romeo because I was
23  turning with the intention for Romeo to give me the I.D. to
24  give to the police officer, but I didn't get the chance to
25  do that because -- yes.

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 9 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                    4/11/2014
                                                                46

1  tell him to go in the house.
2       Q.   And I got that.  What I want to do is walk through
3  it piece by piece.  So, when you heard Fabian say to the
4  police officers, You don't intimidate me by doing that?
5       A.   Yes.
6       Q.   You heard that?
7       A.   Yes.
8       Q.   All right.  And then did you say anything to
9  Fabian?
10      A.   I just call him inside the house.
11      Q.   Did you hear any other conversations between him
12 and the officers?
13      A.   No.  They didn't have any conversation after that
14 until when they reach us and the officer ask about the I.D.
15      Q.   So, then you tell Fabian to go back into the
16 house?
17      A.   Go into the house.
18      Q.   And I think you said he walked around to the front
19 door?
20      A.   Yes.
21      Q.   And then goes into -- I think there's two doors.
22      A.   My apartment.
23      Q.   There's two doors in the front of the house.  He
24 goes into your apartment --
25      A.   This door.

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 10 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                              4/11/2014
                                                                    49

1  Q. And then you're saying you turned around to ask
2  Fabian for his I.D.?
3  A. Yes.
4  Q. Did Fabian give it to you?
5  A. He was like shuffling for it, you know, like
6  shuffling in his pocket, but then the officer did not -- he
7  did not wait for anything like that.
8  Q. Okay.
9  A. The next thing I know is -- I tell you it happened
10 so suddenly -- the next thing I know was the -- I don't know
11 who bring the pepper spray because I was focused on my
12 children because everything was going chaos. So, I felt the
13 taser. I never felt that before in all of my life. So, you
14 know I'm going to get hysterical. And then the next thing I
15 know I felt my hair burning all over here.
16 Q. Okay.
17 A. So, then they driving me out of the place, so I
18 didn't get much of it. I didn't get much of it.
19 Q. So, it sounds to me like after the officers got to
20 the top of the stoop, they asked Fabian for his I.D. You
21 turned to ask Fabian for the I.D. because you want to take
22 it and give it to the officer?
23 A. Yes.
24 Q. And you say Fabian is in the process of shuffling
25 through his pockets?

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 11 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                                    4/11/2014
                                                                    50

1    A.   Yes.
2    Q.   And the next thing you know, you feel a taser and
3  the OC spray?
4    A.   Yes, the pepper spray.
5    Q.   So, did you see anything that occurred between the
6  officers and Fabian?
7    A.   Honestly, I know they came in, and like they were
8  scuffling, you know, with him behind me. I don't know,
9  because the one -- at that time -- after the two police
10 officers, there were more. Where they came from, I don't
11 know because it wasn't any of the two that was chasing me
12 saying I must get out. It was another one chasing me out.
13   Q.   But I'm more concerned about at this doorway, did
14 you see anything that occurred between --
15   A.   Okay.
16   Q.   -- the officer and Fabian?
17   A.   There was --
18   Q.   Just I want to focus on that, just the officer and
19 Fabian. Did you see what occurred between the two? And if
20 you didn't, that's fine. I'm just trying to understand if
21 you did or not.
22   A.   Yeah. I was now focusing on the other one with
23 Kirk. So, one pass me. The other police were coming
24 through the gate. One had Kirk because Kirk came around.
25 He came around from this side.

Case 3:13-cv-00878-WIG   Document 43-4   Filed 07/17/15   Page 12 of 12

FABIAN EDWARDS, ET AL vs. CITY OF HARTFORD, ET AL
Elizabeth Edwards                              4/11/2014
                                                              67

C E R T I F I C A T E

I, Christine E. Borrelli, a Notary Public and Licensed Court Reporter for the State of Connecticut, do hereby certify that the deposition of ELIZABETH EDWARDS, was taken before me pursuant to the Connecticut Practice Book at the Law Offices of Howd & Ludorf, LLC, 65 Wethersfield Avenue, Hartford, Connecticut, commencing at 1:25 p.m. on Friday, April 11, 2014.

I further certify that the witness was first sworn by me to tell the truth, the whole truth, and nothing but the truth, and was examined by counsel, and her testimony was stenographically reported by me and subsequently transcribed as herein before appears.

I further certify that I am not related to the parties hereto or their counsel, and that I am not in any way interested in the events of said cause.

Witness my hand this 15th day of April, 2014.

Christine E. Borrelli
Notary Public
CT License No. 117

My Commission Expires:
June 30, 2016