UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FABIAN EDWARDS and KENVILLE
EDWARDS,

   Plaintiffs,

              vs.

MATTHEW CORNELL, CHRISTOPHER
MAY, and THE CITY OF HARTFORD,

   Defendants.
                                                X

No. 3:13-cv-878(WIG)

## RULING ON CITY OF HARTFORD'S RULE 50 MOTION
## FOR JUDGMENT AS A MATTER OF LAW

In this civil rights action, plaintiffs Fabian Edwards and his brother Kenville Edwards brought claims against the City of Hartford and Harford police officers Matthew Cornell and Christopher May. After a jury trial, on April 27, 2017, a jury rendered a verdict for Officer Cornell on all claims brought by Fabian Edwards. The jury also returned a verdict for Kenville Edwards on his claims against Officer May. The jury found that Officer May violated Kenville's rights by using excessive force against him; it awarded $135,000.00 in compensatory damages and $275,000.00 in punitive damages.[1] Now before the Court is the City of Hartford's Motion for Judgment as a Matter of Law. [Doc. # 170]. For the reasons set forth below, the City's motion is granted in part and denied in part.

---

[1] This was the second trial in this matter. After a trial held in December 2016, a jury found in favor of Officer Cornell on claims brought by Kenville Edwards and in favor of Officer May on claims brought by Fabian Edwards. The jury failed to reach a verdict on the excessive force claim brought by Fabian Edwards against Officer Cornell and on the excessive force claim brought by Kenville Edwards against Officer May.

1

**Legal Standard**

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis. *See* Fed. R. Civ. P. 50. "A district court may not grant a motion for judgment as a matter of law unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) (internal quotations marks omitted). The standard under Rule 50(b) is not one of strength or weakness of the evidence; rather, "the evidence must be such that a reasonable juror would have been *compelled* to accept the view of the moving party." *Id.* (internal quotation marks omitted) (emphasis added). In short, judgment as a matter of law may not be granted unless

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
>
> (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). In determining whether judgment as a matter of law is appropriate, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

**Discussion**

The issue presented in the City's motion is one of great import for all involved: whether, under Conn. Gen. Stat. § 7-465, a municipality is required to indemnify an officer for compensatory damages in an excessive force case when a jury also awards punitive damages. §

2

7-465, provides, as relevant, that a municipality "shall pay on behalf of any employee of such municipality ... all sums which such employee becomes obligated to pay ... for damages awarded for infringement of any person's civil rights ... if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty."

Here, it is undisputed that Officer May was acting in the performance of his duties and within the scope of his employment at the time of the incident involving Kenville Edwards. The City argues that, since the jury made an award of punitive damages, it necessarily found that Officer May's conduct was willful or wanton, and thus not subject to indemnification under § 7-465. Kenville Edwards objects to the City's statutory interpretation, and argues a municipality must indemnify for compensatory and punitive damages arising out of the excessive force verdict. He agrees that in circumstances inapposite to those here, a municipality would not be liable for losses and expenses resulting from a wilful or wanton act that is not a civil rights violation. The argument hinges, in sum, on this matter being a civil rights case. Inexplicably, counsel for Officer May did not present any meaningful argument that would have advanced the clear interest of his client: that, at a minimum, the statute requires indemnification of Officer May for the compensatory damages award. Officer May's counsel, despite the existence of a sound argument, did not distinguish between compensatory and punitive damages in his feckless one-and-a-half page response to the City's motion, much to the disadvantage of the actual client and to the advantage of the entity paying the bills.

The Supreme Court of Connecticut has provided helpful guidance in *City of W. Haven v. Hartford Ins. Co.*, 221 Conn. 149, 154 (1992), which involved a jury award of $30,000 in compensatory damages and $60,000 in punitive damages in a civil rights case. West Haven's insurance company paid the compensatory damages, plus attorney's fees, but refused to pay the punitive damages portion of the award; West Haven paid the punitive damages and sought to recover the amount from its insurer. *Id.* The trial court found that because West Haven was not legally required to pay the punitive damages award, the insurer was not obligated to reimburse it for the amount. *Id.* West Haven appealed.

The Supreme Court agreed with the trial court that West Haven was not under a legal obligation to pay the punitive damages award. *Id.* at 159-63. It reasoned that "the municipality is obligated, pursuant to § 7-465, to indemnify a municipal employee unless the municipal employee acted wilfully or wantonly." *Id.* at 159. Wanton acts include those performed in "reckless and callous disregard of the rights of others." *Id.* at 160 (internal quotation marks omitted).

While the case is silent on the municipality's legal obligation to indemnify for the compensatory portion of the award, it is clear from its analysis that the parties and the court viewed them as indemnifiable. The court examined and approved the jury instructions given at the civil rights trial, which explained that "[p]unitive damages are additional damages beyond those awarded as compensatory to be awarded to the plaintiff as a deterrent to the defendants to discourage them from committing the conduct complained of in the future … You may add such amount as you shall unanimously agree is proper to punish the defendants for *extraordinary misconduct* and to serve as an example or warning to others not to engage in such conduct." *Id.*

at 162 (emphasis in original).² Thus, the court's reasoning indicates that, at least in interpreting §7-465, damages for civil rights violations are categorical by degree. An award of compensatory damages addresses the civil rights violation. As the statute states, "a municipality shall pay on behalf of any employee of such municipality ... all sums which such employee becomes obligated to pay ... for damages awarded for infringement of any person's civil rights ..." An award of punitive damages, however, is for conduct that goes beyond merely a civil rights violation; such an award provides additional compensation for "extraordinary misconduct," or conduct that is more severe than the civil rights violation itself. Under § 7-465, then, it is the damages awarded for that extraordinary conduct, conduct that was "the result of any wilful or wanton act," that does not give rise to municipal indemnification. In this case, the City must indemnify Officer May for the compensatory damages award. The punitive damages award does not require indemnification.

The City did not cite any case that holds that an award of punitive damages for a civil rights violation relieves a municipality from its obligation to pay compensatory damages for the same violation. In fact, the cases cited in the City's motion are consistent with this Court's analysis of *City of W. Haven*. In *Gothberg v. Town of Plainville*, 148 F. Supp. 3d 168, 194 (D. Conn. 2015), the court granted a municipality's motion for judgment on the pleadings as to the plaintiff's § 7-465 claim for indemnification for a Section 1983 claim alleging an intentional violation of the 14th Amendment. In fact, the complaint expressly described the defendants' actions as "willful and wanton." *Id.* at n. 13. This is distinguishable from the Section 1983 violation in the instance case – excessive force – because proof of an excessive force violation

---

² The jury instructions in the instant case are similar. The jury was charged that if they found a constitutional violation giving rise to compensatory damages, they could give "a separate and additional award of punitive damages" to "punish a wrongdoer for extreme or outrageous conduct…" [Doc. # 160 at 19-20].

5

does not require a showing of specific intent. *See Graham v. O'Connor*, 490 U.S. 386, 397 (1989) (explaining that the reasonableness inquiry in excessive forces cases asks whether the officer's actions are objectively reasonable "in light of the facts and circumstances confronting them, *without regard to their underlying intent or motivation*.") (emphasis added).

Likewise, in *Milardo v. City of Middletown*, No. 3:06-CV-01071(DJS), 2009 WL 801614, at *11 (D. Conn. Mar. 25, 2009), the court granted a municipality's motion for summary judgment as to the plaintiffs' § 7-465 claims for indemnification for trespass and intentional infliction of emotional distress causes of action. The court explained that § 7-465 "does not require indemnification for 'wilful' acts," and that "'wilful' is synonymous with 'intentional.'" *Id.* Trespass and intentional infliction of emotional distress, unlike an excessive force claim, require a showing of intentional conduct. *See City of Bristol v. Tilcon Minerals, Inc.*, 284 Conn. 55, 87 (2007) ("The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) *done intentionally*; and (4) causing direct injury.") (emphasis added); *Milardo*, 2009 WL 801614, at *9 (the first element of an intentional infliction of emotional distress claim requires a showing "that the actor *intended to inflict* emotional distress") (emphasis added). The court in *Milardo* also denied the municipality's motion for summary judgment as to the plaintiffs' unreasonable search claim, explaining that claim "certainly falls under 'civil rights' for which Conn. Gen. Stat. § 7-465(a) requires indemnification." *Id.* at *9.

In sum, these cases simply cannot stand for the proposition that an award of punitive damages in a Section 1983 excessive force case relieves a municipality from its obligation to indemnify for the compensatory portion of the award under § 7-465.

6

The City's position, in addition to being unsupported by precedent, is bewildering. How can Hartford maintain a qualified police force when it is willing to expose its officers to personal liability for compensatory damages for civil rights judgments? What capable officer, in his or her right mind, would want to work for such a city? And what message does this send to the community, the residents of Hartford, when their governing officials promote a position that, in all likelihood, will leave them without full compensation for injuries in the event that they are the victims of a civil rights violation? The Court readily understands the need, as a general rule, to deter police officers from the sort of outrageous conduct that warrants punitive damages. But this is not that case. The result in this case, in a second trial after a jury could not reach a verdict in the first, was a close call. This case arose from a confrontation apparently instigated by Fabian Edwards, who lost his case, and involved something of a melee in an enclosed environment in which the officers were initially outnumbered.[3] It is safe to say that no police officer would expect to be abandoned by his employer with respect to an award of compensatory damages in this case, even if a jury unexpectedly also awarded punitive damages. Nor should any officer expect that.

Given the City's position on indemnification, it would have been advisable to bifurcate punitive damages from compensatory damages to allow presentation of evidence on the officer's ability to pay, a relevant factor in a punitive damages analysis. *See Patterson v. Balsamico*, 440 F.3d 104, 121 (2d Cir. 2006). For the amount of both the compensatory and punitive damages

---

[3] Presently, the Court is considering, but has not decided, whether the punitive damages award will stand in whole or in part. That a court may disagree with an award of punitive damages is, of course, not reason enough to disturb that award. Here, while the Court has no issue with the jury's determination of liability, it is considering not only whether to set aside the punitive damages award, but also whether to order remittitur. The Court is contemplating remittitur with no help from Officer May's own counsel, who has neglected issues on which he could actually make a difference for his client in favor of his quixotic pursuit of qualified immunity in this straightforward excessive force case.

awarded, it is obvious that the jury assumed that the City would be paying both. While the Court is concerned about fairness to the plaintiff, who had no reason to request bifurcation, the Court, nevertheless, is considering whether to order a new trial on the punitive damages issues. In the future, this Court and other judges would be well advised to raise the indemnification and bifurcation issues before trial in a civil rights case. If a municipality cannot or will not commit to indemnification of punitive damages, a court should allow the officer to introduce evidence of his or her personal financial situation. *See Patterson* at 121-22.

The City also seeks judgment as a matter of law on the plaintiff's claims brought pursuant to Conn. Gen. Stat. § 7-101a. Unlike § 7-465, which permits a plaintiff to bring a claim against a municipality to indemnify it employees, § 7-101a provides indemnification to the employee from the municipality, and does not contain a direct action by a non-employee plaintiff against the municipality. *See Wilson v. City of Hartford*, No. 3:97-CV-00671(AWT), 1998 WL 229819, at *7 (D. Conn. Mar. 24, 1998). Since § 7-101a does not does not provide a direct cause of action for the plaintiff in this case, *see Miller v. Bridgeport Bd. of Educ.*, No. 3:12-CV-01287 VLB, 2013 WL 3936925, at *11-12 (D. Conn. July 30, 2013) (citing cases), the City's Motion for Judgment as a Matter of Law will be granted as to the counts brought under §7-101a.

Finally, the City is entitled to judgment as a matter of law as to Fabian Edwards's claim against Officer Cornell. Because the jury found in favor of Officer Cornell, the city is under no obligation to indemnify him.

## **Conclusion**

For the foregoing reasons, the City's Motion for Judgment a Matter of Law is granted in part and denied in part.

8

SO ORDERED, this  13th  day of September, 2017, at Bridgeport, Connecticut.

                               */s/ William I. Garfinkel*
                               WILLIAM I. GARFINKEL
                               United States Magistrate Judge