UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FABIAN EDWARDS and KENVILLE
EDWARDS,

    Plaintiffs,

                               No. 3:13-cv-878(WIG)

        vs.

MATTHEW CORNELL, CHRISTOPHER
MAY, and THE CITY OF HARTFORD,

    Defendants.

_____X


**<u>RULING</u>**

      In this civil rights action, plaintiffs, Fabian Edwards and his brother Kenville Edwards,

brought claims against the City of Hartford and Harford police officers Matthew Cornell and

Christopher May.  On April 27, 2017, after a jury trial, a jury rendered a verdict for Officer

Cornell on claims brought by Fabian Edwards.  The jury also returned a verdict for Kenville

Edwards on his claims against Officer May. [1]  The jury found that Officer May violated

Kenville's civil rights by using excessive force against him; it awarded $135,000.00 in

compensatory damages and $275,000.00 in punitive damages.  Now before the Court is Officer

---

[1] This was the second trial in this matter.  After a trial held in December 2016, a jury found in favor of Officer Cornell on claims brought by Kenville Edwards and in favor of Officer May on claims brought by Fabian Edwards.  The jury failed to reach a verdict on the excessive force claim brought by Fabian Edwards against Officer Cornell and on the excessive force claim brought by Kenville Edwards against Officer May.  The jury in the first trial also found in favor of Officer Baumgarten on an excessive force claim brought against him by Kenville Edwards, and rendered verdicts in favor of the officers on claims brought by additional members of the Edwards family.

1

May's Motion for Judgment as a Matter of Law [Doc. # 174] and Motion for a New Trial [Doc. # 175].

## Facts

The following evidence was adduced at trial.[2]

### *Testimony of Fabian Edwards*

On June 14, 2012, Fabian was living in a multi-family house owned by his mother, Elizabeth Edwards. (Tr. 1237-38). His mother lived on the first floor, Fabian lived on the second floor, and Fabian's brother, Kenville Edwards, lived on the third floor. (Tr. 1238). Paulino's Grocery Store was across the street from the home. (Tr. 1241). On June 14, 2012, Fabian arrived home from work around 4 or 5 p.m. and at some point that evening noticed activity going on outside of the house. (Tr. 1249). He saw a police cruiser near Paulino's and people outside. (Tr. 1250). He also saw other police cars in the area. (Tr. 1251). Fabian wanted to go into Paulino's to get a beer. (Tr. 1253). He testified that he stopped outside of the front of the store to call his wife when Officer May told him to "get in the fucking store or [he would] arrest [him]." (Tr. 1258). Fabian moved toward the store and then Officer May pushed him inside. (Tr. 1258).

Soon after, Fabian left the store without purchasing anything, crossed the street, and jumped over the fence into his yard. (Tr. 1259). Once in the yard, he yelled to the officers, Officer May and Officer Cornell, "why did you push me?" (Tr. 1260). The officers then entered the Edwards's property and Elizabeth came out of the house. (Tr. 1261). Fabian and Elizabeth were on the front porch of the house when the officers came up and asked Fabian for his

---

[2] The Court is including here only the facts relevant to the issues presented in Officer May's motions; namely, those facts a reasonable jury finding in favor of Kenville Edwards could have found.

identification.  (Tr. 1262).  Fabian gave his identification to his mother and then saw Kenville come onto the porch.  (Tr. 1262).

### Testimony of Officer Cornell

On June 14, 2012, Officer May and Officer Cornell were on duty, assigned to the neighbored in which the Edwards's home was located.  (Tr. 1567).  Officer Cornell noticed Fabian Edwards when Fabian was standing at the fence in his yard.  (Tr. 1577).  He recalls hearing Fabian yelling.  (Tr. 1578).  At some point, he and Officer May went over to Fabian.  (Tr. 1578).  Officer Cornell saw Fabian walk up to the front porch of the home and then he and Officer May went onto the property.  (Tr. 1585, 1586).  Fabian's mother was standing on the porch with Fabian.  (Tr. 1587).  At some point Kenville Edwards appeared on the porch.  (Tr. 1588).

### Testimony of Kenville Edwards

Kenville Edwards testified that he saw two officers walking towards the front porch of his house after he saw Fabian and his mother walking to the front of the house.  (Tr. 1438).  He came to the front of the house from around the back.  (Tr. 1439).  When he arrived at the front porch, both officers were there with Fabian and Elizabeth.  (Tr. 1439).  He asked the officers what his bother did.  (Tr. 1439).  Officer May asked Kenville if he lived there, and Kenville replied yes.  (Tr. 1439).  Then, Officer May told Kenville to "back up off the porch."  (Tr. 1439). Kenville again inquired about his brother.  (Tr. 1439).  At that point, Officer May grabbed Kenville's right hand and bent it behind him, and grabbed Kenville around the throat, "choking [him]."  (Tr. 1140).  At some point thereafter, Officer May pushed Kenville away. (Tr. 1140). Kenville stated he stumbled and then went inside the front door.  (Tr. 1441).  He did not believe, at that time, that Officer May was attempting to place him under arrest.  (Tr. 1481).  Kenville

testified that if May wanted to arrest him, "all he had to say to [him] was just, put [his] hands behind [his] back." (Tr. 1482). Then, Officer May deployed pepper spray in Kenville's face. (Tr. 1441).

Kenville testified that at the time the pepper sprayed was deployed he was just inside the doorway to the house; he tried to find the railing so that he could make his way upstairs. (Tr. 1442). He went from the first floor to his apartment on the third floor; his apartment door was already open. (Tr. 1443). He went up the stairs "step by step," but could not run because he could not see. (Tr. 1443). Once he got into his apartment, there was a clear space "straight to the kitchen." (Tr. 1443). He felt his way to the kitchen sink, turned on the water, and tried to flush out his eyes. (Tr. 1444). The water made the burning worse. (Tr. 1444). Then, he heard "the door beating," and his friend tell him that the police were there. (Tr. 1444).

Kenville testified that he "felt something hit [him] on [the] side of [his] head" when he was at the sink, and it was "something hard… not a fist." (Tr. 1444, 1447). He fell to the ground. (Tr. 1446). He testified that he did not take a "fighting stance" while on the third floor. (Tr. 1446). He could not even open his eyes to see where the officers were. (Tr. 1446). While on the ground, he was trying to block strikes from the officers, attempting to "stop the punches from going to [his] head." (Tr. 1446). He felt punches to the head and hits to his body. (Tr. 1444).

After receiving a couple of punches, he passed out. (Tr. 1445). The next thing Kenville recalls was waking up in the hospital where a nurse was stitching up his ear; he had sustained a tear to his left ear requiring five sutures. (Tr. 1445).

Kenville stated that, during the incident, he never punched or kicked any officer. (Tr. 1447). He did not fight with any officer. (Tr. 1459). He weighed 140 pounds on the date of the

incident. (Tr. 1497). As a result of the incident, he feels "scared, threatened most of the time" when he sees police officers and stays away from police. (Tr. 1460). He moved out of state shortly after the incident. (Tr. 1461).

### *Testimony of Elizabeth Edwards*

Elizabeth Edwards, mother of Kenville and Fabian, testified that she saw the officers bringing Kenville down to the back porch. (Tr. 1381). She stated that the officers "just dropped him on the floor on the back porch." (Tr. 1381). Elizabeth Edwards further testified that she took several photos the day after the incident, and other photos several weeks after. (Tr. 1381). She photographed the third floor kitchen floor, the stairs, and the back porch. (Tr. 1382-84).

### *Testimony of Officer May*

Officer May testified that he and Officer Cornell initially entered the Edwards's property to investigate and "quell the situation." (Tr. 1752). While the officers were on the front porch asking Fabian for his identification, Kenville came onto the porch. (Tr. 1753). Officer May asked Kenville if he lived there and Kenville said he did. (Tr. 1753). When he asked Kenville to step off of the porch, Kenville said "make me" and "balled up his fists in a, like, kind of defiant type manner." (Tr. 1753). Officer May described this as a "pre-attack indicator," a sign a suspect exhibits before engaging in a fight or attack. (Tr. 1754). Officer May testified that, at that point, he informed Kenville he was under arrest and attempted to cuff him by trying to grab his left hand. (Tr. 1755). Officer May stated that Kenville pulled his hand away and then pushed Officer May and struck him in the torso; Officer May thought he was being attacked. (Tr. 1756). He and Kenville were struggling with each other. (Tr. 1756). Officer May denied putting Kenville into a choke hold, but said it was possible that his arm went around Kenville's head or neck because of Kenville's resistance. (Tr. 1757).

Officer May further testified that, at some point, he released Kenville and gave Kenville a burst of pepper spray in the face. (Tr. 1760). He denied pushing Kenville. (Tr. 1760). After the pepper spray was used, Kenville went upstairs into the apartment. (Tr. 1761). Officer May went to assist Officer Cornell, who was restraining Fabian Edwards, and then went upstairs after Kenville. (Tr. 1762). He took a back stairway to the third floor and found the rear door to the third floor apartment to be open. (Tr. 1766). Officer May entered the third floor apartment and observed Kenville by the sink with the water running. (Tr. 1766). He testified that Kenville "step[ped] back from the sink kind of like in a fighting stance." (Tr. 1767). Officer May perceived this as another "pre-attack indicator." (Tr. 1767). Officer May then grabbed Kenville around the waist and brought him to the ground. (Tr. 1768). He tried to control Kenville's hands to handcuff him. (Tr. 1768). Officer Baumgarten, who had recently arrived on the scene, was behind Officer May trying to control Kenville's legs. (Tr. 1768). Officer May testified that because Kenville was resisting being handcuffed, he "administer[ed] two punches to his head in [a] controlled pain compliance technique." (Tr. 1768). While Kenville was "temporarily stunned," the officers were able to get him into handcuffs. (Tr. 1768). The officers then carried Kenville downstairs to an ambulance. (Tr. 1770). Officer May stated that he held Kenville's torso and Officer Baumgarten held Kenville's feet. (Tr. 1704). They carried him from the third floor to the first floor, face down. (Tr. 1704). They carried him down the back stairwell, but did not drop him on the back porch. (Tr. 1771). Officer May did note that Kenville had a laceration to his ear but did not observe any dripping blood. (Tr. 1703, 1772).

### Testimony of Officer Baumgarten

When Officer Baumgarten arrived on the scene, he went up the stairs to the third floor apartment. (Tr. 1780). When he got to the third floor, the first thing he observed was Officer

May bringing Kenville to the ground. (Tr. 1781). He did not see Kenville take a "fighting stance." (Tr. 1781). At no point on the third floor did he see Kenville punch or kick an officer. (Tr. 1782). Officer Baumgarten testified that he saw that Kenville was bleeding from the ear but did not observe blood on the floor. (Tr. 1783). He testified that four officers carried Kenville down the stairs, and did not drop him on the back porch. (Tr. 1784). The officers brought Kenville to a police car to secure him and then notified emergency medical services that Kenville needed medical attention. (Tr. 1785).

### Testimony of Gerardo Paulino

Gerardo Paulino testified that he works in his father's store, Paulino's Grocery Store. (Tr. 1328). He knows of Kenville and Fabian Edwards as customers. (Tr. 1329, 1330). On June 14, 2012, he recalled seeing Fabian almost falling as he came into the store, but did not actually see if Fabian was pushed. (Tr. 1332, 1334). He did see a police officer behind Fabian. (Tr. 1334).

### Kenville's medical records

Ambulance records from June 14, 2012 indicate that Kenville was found lying on the porch. (Ex. 38). He was alert to verbal stimuli and was disoriented with incoherent speech. (Ex. 38). There was bleeding from the head/face. (Ex. 38). There was swelling to the face and head and a small laceration to the left earlobe. (Ex. 38).

Kenville was admitted to Hartford Hospital on June 14, 2012. (Ex. 39). Emergency medical services stated that the patient was unresponsive upon their arrival to the scene. (Ex. 39). His diagnoses were laceration and closed head injury. (Ex. 39). Kenville was given five sutures to close a laceration on his left ear. (Ex. 39).

Kenville had a follow up visit to Hartford Hospital on June 19, 2012. (Ex. 41). He was diagnosed with post-concussive syndrome and a closed head injury. (Ex. 41).

<u>Discussion</u>

### A. **Officer May's Motion for Judgment as a Matter of Law**

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis. Fed. R. Civ. P. 50. "A district court may not grant a motion for judgment as a matter of law unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) (internal quotations marks omitted). The standard under Rule 50(b) is not one of strength or weakness of the evidence; rather, "the evidence must be such that a reasonable juror would have been *compelled* to accept the view of the moving party." *Id.* (internal quotation marks omitted) (emphasis added). Thus, Officer May's motion may not be granted unless he can demonstrate

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
>
> (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [him].

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). In determining whether judgment as a matter of law is appropriate, "the court must draw all reasonable inferences in favor of the nonmoving party,[3] and it may not make credibility

---

[3] With an apparent disregard for the relevant legal standard, defense counsel's motion presents the facts in the light most favorable to Officer May. Defense counsel's law firm has, once before, been reminded by a court of the proper legal standard. *See Aczel v. Labonia*, 92

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

Officer May's motion raises numerous arguments, which the Court will address in turn.

**1. The jury's finding that Officer May used excessive force**

Officer May first argues that the jury could not have reasonably found that he used excessive force against Kenville Edwards. In making this argument, Officer May's brief breaks down the incident into a series of events. The Court, however, declines to take such an approach. What is critical here is not whether one act or another constituted excessive force, but that the jury found that the force used under the circumstances was unreasonable. *See Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) (declining to grant summary judgment on one act in an excessive force case, explaining that "the jury will be required to determine whether excessive force was used to effectuate the arrest in the whole context in which it happened; it will not be asked to slice it into individual pieces to determine whether any of those pieces standing alone constituted excessive force."). Further, as explained more fully below, in this particular case it is not necessary to divide the interaction into separate components in order to decide whether Officer May is entitled to qualified immunity. Accordingly, the Court will consider the incident as a whole when determining whether the jury's liability finding has a sufficient evidentiary basis.

The Fourth Amendment prohibits the use of excessive force by a police officer in effecting an arrest. The determination of whether an officer's use of force is reasonable

---

Fed.App'x 17 (2d Cir. 2004) (where the Second Circuit noted that counsel's brief in support of appeal of the district court's denial of it motion for summary judgment was "glaringly replete with [their] own versions of the events." ). Perhaps, after a second reminder, the message will stick.

"requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The law is clear that some degree of force is permitted in effectuating a lawful arrest; thus, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (citation and internal quotation marks omitted). The question is whether the officer's use of force was objectively reasonable. *Id.* at 397. The reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The officers' actions must be objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular circumstances is 'reasonableness at the moment.'" *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (citing *Graham*, 490 U.S. at 396-97).

As explained above, in excessive force cases, the jury need not "dissect a police encounter into its separate components… or view each specific act taken by police officers in isolation." *Rickettes v. Turton*, No. 12-CV-6427(SMG), 2015 WL 3868070, at *6 (E.D.N.Y. June 23, 2015) (internal quotation marks and citation omitted). What the jury must do is "pay careful attention to the facts and circumstances of the incident and determine whether, in light of the totality of the circumstances, the officers acted reasonably." (*Id.*) (internal quotation marks and citation omitted).

Here, the evidence is such that a reasonable fact-finder would not be compelled to accept Officer May's version of events. This case centers on credibility. Kenville Edwards and Officer May gave conflicting accounts of what happened on June 14, 2012. In general terms, Kenville maintains that he was never informed he was under arrest, and that he did not offer any resistance against Officer May except to defend himself from Officer May's strikes. Officer May, in contrast, testified that he did inform Kenville that he was under arrest, and that Kenville actively resisted arrest and displayed "pre-attack indicators" until Officer May used a pain compliance technique upon him. Officer May does make clear that he struck Kenville twice in the head when they were in the third floor apartment. These punches occurred after Kenville had been sprayed with pepper spray, and while another officer was holding Kenville's legs. Officer May testified that the two strikes were delivered as a pain compliance technique in accordance with his training.

First, Officer May argues that since the jury in the first trial found in favor of Officer Baumgarten on Kenville's excessive force claims against that officer, no reasonable jury could find that Officer May's use of force on the third floor was unreasonable. This argument is premised on defense counsel interpreting the first jury's verdict as commensurate with a finding that the force the officers used was reasonable. As the Court has already pointed out to defense counsel on several occasions, the first jury's verdict cannot be interpreted in such a manner. Rather, what the first jury determined was that Kenville did not prove by a preponderance of the evidence that Officer Baumgarten used excessive force against him. This is by no means a rational argument that no reasonable jury could find that *Officer May's* use of force was unreasonable.

Next, Officer May appears to argue that because the force used was a technique he has been trained to employ, that the strikes administered on the third floor were necessarily reasonable. Such an argument confounds logic. That a certain technique may be valid in some situations does not, of course, mean that it is valid in every instance. Under certain circumstances, in accordance with their training, police officers are allowed to use deadly force. It would be absurd to argue, however, that using deadly force is reasonable in any circumstance simply because it is in accordance with an officer's training. Likewise, that a suspect may be resisting arrest does not give an officer unfettered license to use any amount of force. While an officer may be justified in using "*some* degree of force" against a resisting suspect, the officer may not "use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161 (2d Cir. 2000) (emphasis in original). Rather, "the force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened against the officer." *Id.* Here, even taking the facts in May's favor – the incorrect legal standard that defense counsel proposes – a reasonable jury could find that two strikes to the head was excessive in relation to the goal of getting this particular suspect to comply with attempts to place him in handcuffs under the circumstances.

To the extent Officer May argues that the jury's verdict is unreasonable because Kenville's injuries are inconsistent with the level of force he claimed was used against him, that argument cannot prevail. It is clear that even a slight injury will not preclude a jury's finding that a challenged use of force was unreasonable. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) (finding that summary judgment may not be granted in defendant's favor simply because the plaintiff's injury was not serious, reasoning that "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.");

*Felmine v. City of New York*, No. 09-CV-3768 CBA JO, 2011 WL 4543268, at *19 (E.D.N.Y. Sept. 29, 2011) ("The law of this circuit … does not appear to place a demanding requirement on excessive force plaintiffs to demonstrate injury.").  Further, there was objective medical evidence documenting Kenville's injuries: a laceration, disorientation at the scene, and diagnoses of a closed head injury and post-concussive syndrome are sufficient evidence for a reasonable jury to credit Kenville's testimony.

In all, a reasonable jury would not have been compelled to accept Officer May's version of events regarding the use of force.  The jury's liability finding will stand.

### 2. Photographs

Admitted at trial were several photographs of the Edwards's home showing what appeared to be drops of blood on the floor.  Officer May challenges the admission of these exhibits, arguing that no reasonable jury could have found that they showed Kenville's blood as a result of the incident.  Specifically, Officer May argues that the photographs were not properly authenticated and that any testimony that the photographs did in fact depict blood amounted to speculation.

The Court finds that the photographs were properly authenticated.  "Federal Rule of Evidence 901(a) requires that an item of evidence be 'authenticated' through introduction of evidence sufficient to warrant a finding that the item is what the proponent says it is."  *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126 (2d Cir. 2016).  Authentication under the rule is not "a particularly high hurdle, and is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification."  *Id.* (internal quotation marks omitted) (citation omitted).  Kenville's testimony easily meets this standard: When Kenville was asked about photographic evidence relating to the incident, he pointed out to the

jury what in the photographs he contended was blood. He stated that he believed the pictures showed his blood because they were of his apartment and there was no blood there before the incident, and when he came back from the hospital after the incident the blood was there. He testified that the pictures fairly and accurately reflect what he recalled seeing the day he returned from the hospital. Further, Elizabeth Edwards testified that she took the photographs after the incident. In addition to the photographs being properly authenticated, a reasonable jury could find that they depicted blood without resorting to speculation. The objective medical evidence shows that Kenville needed five sutures to the ear as a result of the incident. And, emergency medical services records note that Kenville had controlled bleeding at the scene.

### 3. Compensatory Damages

Next, Officer May posits that the jury could not have reasonably awarded compensatory damages because Kenville did not meet his burden of proving facts that allowed the jury to arrive at the award with reasonable certainty.

This argument must be rejected. Kenville did provide testimony that would allow the jury to award him compensatory damages. He spoke of the emotional impact the situation had on him, including his fear of police. Also admitted into evidence were medical records showing a closed head injury and a laceration requiring sutures as a result of the incident. There was also a diagnosis of post-concussion syndrome after the incident. Given this evidence, the jury could make an award of compensatory damages without resulting to sympathy or bias or speculation.

In the Reply brief, defense counsel appears to ask for remittitur of the compensatory damages award. Since this point only appears in the Reply, it is untimely and will not be considered by the Court. *See Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007) ("Arguments first raised in reply memoranda are not properly considered.")

(internal quotation marks and citation omitted).  Even more, the Reply brief fails to cite a case that would justify remittitur in this instance, and instead asks the Court to apply an incorrect legal standard; the Court is not at liberty to adjust a jury's award of damages to an amount it deems "fair and reasonable," as defense counsel entreats.  If that was the standard, the Court could entertain reducing the award; the law is clear, however, that compensatory damages can be reduced only when "the award is so high as to shock the judicial conscience and constitute a denial of justice."  *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997).  That is not the case here, and defense counsel has not made a cogent argument otherwise.  The compensatory damages award will stand.

### 4. Punitive Damages

Officer May also argues that the jury could not have reasonably awarded punitive damages.[4]  Again, it is not until the Reply brief that defense counsel asks for remittitur, which would have been the client's strongest position.  While this argument is untimely, *see Johnson & Johnson*, 525 F. Supp. 2d at 359, the Court can, *sua sponte*, offer remittitur.  *See U.S. ex rel. Maris Equip. Co. v. Morganti, Inc.*, 163 F. Supp. 174, 191 (E.D.N.Y. 2001), *aff'd sub nom. Morganti Inc. v. Liberty Bond Serv., Inc.*, 67 F. App'x 68 (2d Cir. 2003); *see also Cotto v. City of Middletown*, 158 F. Supp. 3d 67, 89 (D. Conn. 2016) ("Although the defendants did not formally object to the amount of punitive damages awarded, [the court] may review the size of the award for excessiveness and *sua sponte* offer remittitur as an alternative to a new trial.").[5]

---

[4] While the Court may have thought twice about awarding punitive damages in this case, the decision to award them was for the jury, and not the Court, to make.  Here, as set forth below, under the relevant standards for evaluating an award of punitive damages, a reasonable jury could have awarded them.

[5] Interestingly, defense counsel here was also defense counsel in the *Cotto* case.  There, too, defense counsel failed to object to the amount of punitive damages awarded and the district

"Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (citing *Smith v. Wade,* 461 U.S. 30, 56 (1983)). "If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Id.* (internal quotation marks and citation omitted). When evaluating whether an award of punitive damages is excessive, courts must keep in mind the purpose of punitive damages: "to punish the defendant and to deter him and others from similar conduct in the future." *Id.* at 809 (citation omitted). There are three factors courts should consider when evaluating the excessiveness of a punitive damages award: (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of punitive damages to the plaintiff's actual harm; and (3) the difference between the award and awards imposed in comparable cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

Reprehensibility is "perhaps the most important" factor in assessing a punitive damage award. *Lee*, 101 F.3d at 809 (citing *Gore*, 517 U.S. at 577-79). There are "aggravating factors" that are "associated with particularly reprehensible conduct" and contribute to the sense that "some wrongs are more blameworthy than others." *Id.* (citing *Gore*, 517 U.S. at 577-59.) These factors include "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence,

---

court, *sua sponte*, offered remittitur. They did not learn from that experience, and once again a court has to do what counsel should have done.

and (3) whether a defendant has engaged in repeated instances of misconduct." *Id.* (citing *Gore*, 517 U.S. at 577-79).

Crediting Kenville's version of the incident, Officer May engaged in conduct sufficient to justify an award of punitive damages. The conduct was clearly violent: Officer May punched Kenville Edwards in the head twice with such force that Kenville Edwards was diagnosed with post-concussion syndrome. A reasonable jury could have found that level of force excessive under the circumstances. And, after two punches to Kenville's head, Officer May, along with other officers, carried Kenville face-down down three flights of stairs. In addition, taking the facts in the light most favorable to the plaintiff, the officers dropped Kenville, face down, on the porch in front of his mother. This behavior, which shows a deliberate indifference to the medical needs of Kenville Edwards, goes beyond mere negligence. Thus, the first *Gore* factor is satisfied.

The second guidepost considers "the ratio of the punitive damages award to the compensatory award, and consider whether that ratio is reasonable in the circumstances of the case." *Payne v. Jones*, 711 F.3d 85, 102 (2d Cir. 2013). When a plaintiff in a Section 1983 case suffered "a very small injury" but the defendant acted reprehensibly, "the appropriate ratios can be very high." *Id.* When, on the other hand, "the harm to the plaintiff is substantial, and sufficient to result in a compensatory award… even a single digit ratio can mean a high punitive award." *Id.* at 102-03 (noting that in cases where compensatory damages are substantial, a lesser ratio can reach the "outermost limit" of reasonableness) (citation omitted).

Here, the ratio of the $275,000 punitive damages award to the $135,000 compensatory damages award is 2.03 to 1. This award does not come near the "breathtaking 500 to 1" ratio the *Gore* court found to "raise a suspicious judicial eyebrow." *Gore*, 517 U.S. at 583.

Finally, the third guidepost requires consideration of awards in comparable cases. *See Cotto*, 158 F.Supp.3d at 90. In *O'Neill v. Krzeminski*, 839 F.2d 9, 13-14 (2d Cir. 1988), the court upheld a punitive damages award against two officers totaling $185,000, reasoning that on the facts of the case – "the plaintiff, while handcuffed and unable to defend himself, was struck repeatedly about the head by two law enforcement officers" – the award was not excessive. The plaintiff there did not suffer any permanent physical injuries, but did suffer physical and emotional distress as a result of the incident. *Id.* at 13.

In *Lee*, the court reduced a punitive damages award from $200,000 to $75,000, reasoning that the award exceeded punitive damages awarded in other cases where plaintiff suffered numerous and severe physical and psychological harms. *Lee*, 101 F.3d at 812-13. In *Lee*, the plaintiff was beaten with a baton several times, and was subsequently treated for cuts and contusions to the head. *Id.* at 807-08.

In *DiSorbo v. Hoy*, 343 F.3d 172, 189 (2d Cir. 2003), when the plaintiff had bruising, two hematomas on her head, and psychological injuries as a result of an officer's use of force against her, the court reduced a $1.275 million punitive damages award to $75,000, finding that this amount "more accurately reflects the severity of [the officer's] acts under the *Gore* guideposts."

Here, as in *Lee* and *DiSorbo*, an award of punitive damages of $75,000 more accurately reflects the severity of the officer's acts and the extent of the plaintiff's injuries. Accordingly, the Court orders remittitur in the amount of $200,000. If Kenville Edwards fails to accept a punitive damages award of $75,000.00 within 30 days of this Ruling by filing a motion, the Court will schedule a new trial on the question of punitive damages.[6]

---

[6] If there is a new trial on punitive damages, the Court will admit evidence of Officer May's financial situation should he seek to introduce it. *See Lee*, 101 F.3d at 813 (recognizing that "one purpose of punitive damages is deterrence, and that deterrence is directly related to what people

### 5. Qualified Immunity

Officer May maintains that he is entitled to qualified immunity as a matter of law. An officer is entitled to qualified immunity if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was objectively reasonable for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (internal quotation marks omitted). When, as here, a jury's excessive force finding is upheld, only the second prong of the qualified immunity inquiry is at issue: "whether a reasonable officer faced with the same factual scenario that [the defendant officer] encountered would have known that his use of force was unreasonable." *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 569 (E.D.N.Y. 2013).

For the same reasons a reasonable jury could find that the force used was excessive, the Court cannot find that the force used was objectively reasonable for qualified immunity purposes. *See id.* (explaining that the evidence supporting the jury's finding of excessive force also shows that a reasonable officer would not believe the force used was reasonable); *see also O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (citing *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.1994)) ("[i]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits."); *Pub. Adm'r of Queens Cty. ex rel. Estate & Beneficiaries of Guzman v. City of New York*, No. 06 CIV. 7099, 2009 WL 498976, at *5 (S.D.N.Y. Feb. 24, 2009) (explaining that, in excessive force cases, "the answer to either the qualified immunity or the Fourth Amendment question often resolves the other.").

---

can afford to pay."); *DiSorbo*, 343 F.3d at 189 (instructing the district court to admit evidence of the officer's ability to pay in the event there is a new trial on punitive damages).

As discussed above, it is undisputed that Officer May struck Kenville Edwards twice in the head after he had been impaired by pepper spray, and while another officer was restraining Kenville's legs. Crediting Kenville's testimony that he was not offering any resistance at that point, a reasonable officer would have known that it would be excessive to use that level of force in order to handcuff an unresisting, already impaired suspect, particularly when the ratio of officers to suspects was two to one.

In addition, when there are facts in dispute as to the level of force used, judgment as a matter of law should not be granted on a qualified immunity claim. *See White v. Francis Mcdermott*, No. 3:08-CV-634 JBA, 2010 WL 4687620, at *2 (D. Conn. Nov. 4, 2010). "Where the circumstances are in dispute, and contrasting accounts ... present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (internal quotation marks and citations omitted).

Here, since both parties present differing accounts of the incident, granting qualified immunity on a motion for judgment as a matter of law would be inappropriate. *See McLaurin v. Falcone*, No. 05-4849-CV, 2007 WL 247728, at *1 (2d Cir. Jan. 25, 2007); *see also Schwartz v. Town of Plainville*, 483 F. Supp. 2d 192, 197 (D. Conn. 2007) (explaining that granting summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness of the force used) (citing *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999)).

Finally, Officer May maintains that the Court should have served interrogatories on the jury to resolve the qualified immunity inquiry. In order for this argument to be successful, it must be premised on the case having factual issues dispositive of the availability of qualified

immunity. This case does not. The interrogatories that defense counsel proposed would have done nothing but make the case vulnerable to an inconsistent verdict; none of the proposed interrogatories were necessary for the Court to determine if there should be qualified immunity. This was a straightforward excessive force case. The jury had to determine whether Officer May's use of force was reasonable under the circumstances. There were no factual intricacies here that would influence whether or not qualified immunity was available. The case was simply about whether Officer May's use of force was reasonable. The jury resolved this question when it found that Officer May used unreasonable force against Kenville Edwards. As such, Officer May is not entitled to qualified immunity.[7]

After considering all of the arguments raised by Officer May, the Court concludes that there is a legally sufficient evidentiary basis for the jury's verdict. Accordingly, the Motion for Judgment as a Matter of Law is denied.

### B. Officer May's Motion for a New Trial

Motions for a new trial are governed by Rule 59 of the Federal Rules of Civil Procedure. A new trial is granted when, "in the opinion of the district court, the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (internal quotation marks and citation omitted). Officer May's motion can only be granted if "the jury's verdict [was] against the weight of the evidence." *Id.* While the Court is free to weigh the evidence itself when evaluating a Rule 59 motion for a new trial, "a high degree of deference is accorded to the jury's evaluation of witness credibility." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir.

---

[7] Officer May presents additional arguments regarding jury interrogatories in his Motion for a New Trial. Those points are addressed below.

2014). Therefore, "jury verdicts should be disturbed with great infrequency." *Id.* When a jury's verdict "is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Id.* (internal quotation marks and citation omitted). "The decision whether to grant a new trial under Rule 59 is committed to the sound discretion of the trial court." *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F.Supp.2d 118, 142 (E.D.N.Y. 2013) (internal quotation marks and citations omitted).

Keeping these standards in mind, the Court will address Officer May's arguments.

**1. Jury Interrogatories**

Officer May first claims that the Court erred by not allowing him to serve special jury interrogatories. Defense counsel appears to argue that the submission of interrogatories to the jury was *required*. This is not so. It is pellucidly clear that whether or not to submit special interrogatories to the jury is "a matter [left] to the district court's sound discretion." *Barksdale v. Colavita*, 506 Fed.Appx. 82, 85 (2d Cir. 2012). In addition, when a defendant's proposed jury interrogatories "would not, even if answered in his favor, have supplied a factual predicate for qualified immunity," the court has no duty to present interrogatories to the jury. *Alla v. Verkay*, 979 F.Supp.2d 349, 370 (E.D.N.Y. 2013).

The main case upon which Officer May relies in support of his argument that special interrogatories were required is factually distinguishable. In *Cowan v. Breen*, 352 F.3d 756 (2d Cir. 2003), at issue was the reasonableness of the use of deadly force. The parties presented conflicting factual accounts as to whether the plaintiff threatened the officer with deadly force and whether the officer could reasonably believe he was in danger. *Id.* at 759-60. As the *Cowan* court explained, in that case the excessive force and qualified immunity analyses were distinct:

excessive force looks at whether there was a constitutional violation; qualified immunity "looks at an officer's mistake as to what the law requires." *Id.* at 762. When a factual scenario involves an officer alleging his force was in response to being in significant danger, the officer must show "his *belief* that his conduct was *lawful* was reasonable" in order to be entitled to qualified immunity." *Id.* (emphasis in original). The court explained that when excessive force and qualified immunity determinations involve overlapping factual disputes, it recommends that interrogatories on "key factual disputes" be presented to the jury. *Id.* at 764. In *Cowan*, the jury would need to determine whether the plaintiff drove a vehicle at the officer, whether the officer was in a "zone of danger," and whether the officer could have gotten out of the way instead of using lethal force. *Id.* The key factual disputes were directly tied to whether the officer was entitled to qualified immunity.

Jury interrogatories can be useful when there are "factual disputes overlapping the excessive force and qualified immunity issues that the jury must find." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003). In *Stephenson*, there was a dispute over whether an officer gave warning to the plaintiff before shooting him in the back, whether the plaintiff was armed, and whether the officer actually believed the plaintiff was armed. *Id.* The court found these to be "key factual disputes that may affect the resolution of the qualified immunity issue." *Id.*

The instant case does not present such factual scenarios necessitating the use of special interrogatories. As explain above, this was a straightforward excessive force case; there were no factual intricacies that would influence whether or not qualified immunity was available. Unlike *Cowan* and *Stephenson*, there were no key factual disputes that were directly tied to whether Officer May is entitled to qualified immunity. In fact, Officer May's testimony established what could very well be the basis for the jury's excessive force finding. Even if the jury believed that

Kenville was offering some resistance while on the floor in the third floor apartment, the jury still could have found that the force Officer May employed in response was unreasonable. Since defense counsel had not proposed a jury interrogatory that would address a factual dispute dispositive of qualified immunity, and in light of the deference accorded to district courts in determining whether or not special jury interrogatories are appropriate, the lack of them here will not be the basis for a new trial.

## 2. Evidentiary Rulings

Next, Officer May avers that the Court erred in several of its evidentiary rulings.

### a. *Evidence of use of force to gain entry to the third floor apartment*

The jury heard some evidence that police officers used force to gain entry into Kenville Edwards's third floor apartment. Officer May argues that this evidence was not relevant. Contrary to Officer May's contentions, this testimony is relevant. How the officers behaved is at the heart of this case. The manner of entry to the third floor apartment is part of that. Officer May presented his side: that the door to the third floor apartment was open. The jury was entitled to hear the conflicting testimony and resolve it.

Defense counsel also posits that admission of this evidence was improper character evidence under Federal Rule of Evidence 404(b). This argument is utterly unavailing. Rule 404(b) disallows evidence of "a crime, wrong, or other act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404. Testimony about officers breaking down the door to the third floor apartment *during* the incident that gave rise to Kenville's excessive force claim does not, by any stretch of the imagination, constitute *other act* evidence. The testimony was directly relevant to the actions of the officers during the incident in question. It cannot possibly be construed as improper

character evidence. *C.f. United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (explaining that when an action and the crime charged are "inextricably intertwined," the action is not extrinsic evidence governed by Rule 404(b)).

To the extent Officer May argues that admitting testimony of use of force to gain entry to the third floor apartment confused the jury, the Court is assured that this was not the case. The jury instructions make clear that the only claim against Officer May was an excessive force claim and that there were no allegations of unlawful entry.

### b. *Evidence of Fabian being pushed*

The jury also heard testimony that Fabian Edwards was pushed into Paulino's by Officer May. Since Fabian Edwards did not have a claim against Officer May, this testimony was not harmful with respect to Kenville Edwards's claim against Officer May and will not form the basis for a new trial. As to relevance, the alleged push into the store was what set in motion the interaction between the parties. The officers entered the Edwards's property in response to Fabian's yelling at them. Fabian testified that he shouted at the officers about being pushed. The jury was entitled to hear the context leading up to the incident. There was no risk of unfair prejudice to Officer May: the jury instructions made clear that only Kenville – and not Fabian – had an excessive force claim against Officer May. In addition, the testimony did not constitute improper character evidence. As set forth above, the alleged push was a part of this incident, and is not "other act" evidence. Finally, it is worth noting that despite the evidence being admitted, Fabian Edwards did not prevail on his claim.

### c. *Preclusion of evidence regarding Paulino's Grocery Store*

Officer May also takes issue with the Court's decision to *sua sponte* preclude Officer Cornell from testifying that Paulino's Grocery Store had been subjected to a narcotics warrant

prior to the date of the incident.  He argues that this testimony was relevant to show that Gerardo Paulino was biased against the Hartford Police Department and would call into question his testimony in this case.

The trial court has control over the evidence presented at trial and may exclude evidence even absent a party's objection to it.  *See United States v. Clarke*, 390 F. Supp. 2d 131, 135 (D. Conn. 2005), *aff'd,* 257 F. App'x 361 (2d Cir. 2007) (explaining that the trial judge has "not only" the right, but the "duty … to see that only proper and relevant evidence is admitted.") (citation omitted).  Any evidence of a prior narcotics warrant would be irrelevant and possibly inadmissible hearsay.  While the Court was surprised by plaintiffs' counsel's failure to seek to preclude the evidence, the Court was well within its right to exclude it *sua sponte*: an alleged search warrant served on a non-party at some point in the past and entirely unrelated to the matters in the instant case is irrelevant.  And, since there is no indication Gerardo Paulino was involved in any past interactions between law enforcement and his father's store, any argument that the precluded evidence was necessary to show his bias against police is speculative.  Finally, this evidence related to Fabian's claim; as noted above, Fabian lost.

> ### d.  *Deposition Designations*

Officer May raises several issues regarding deposition testimony admitted at trial.  Three of the plaintiffs' witnesses were unavailable, and thus testified at trial via deposition designations.  Each of these witnesses had executed an affidavit regarding the incident.  When they were deposed, the questioning included inquiries pertaining to the affidavits, and the jury heard some of these questions.  To alleviate any confusion, the Court gave the jury a limiting instruction:

> And I should just mention what we call a limiting instruction.  During the read
> back in this testimony from other occasions there's going to be reference to

> affidavits. And the affidavits were used as a way to have the witnesses explain what happened. Only the witnesses' answers to the questions can be considered evidence. The affidavits that are referred to are not evidence in themselves and should not be considered as evidence. Only what the witness says in response to the questions is evidence.

(Tr. 1325-26). Officer May claims that the affidavits are not substantive evidence, were not properly authenticated, and were inadmissible as prior inconsistent statements. The Court's limiting instruction moots all of these arguments.

Officer May additionally claims that the deposition designations read into evidence contained improper leading questions. He does not, however, make any claim that the leading questions resulted in a miscarriage of justice or in any way satisfy the legal standards for granting a new trial. Accordingly, this argument is rejected.

### e. *Photographic Evidence*

Again, Officer May challenges the admission of photographs allegedly depicting blood at the scene of the incident. This argument was addressed above, and for the same reasons, will not be grounds for a new trial.

### f. *Preclusion of Kenville Edward's prior medical records*

Next, Officer May avers that the Court erred in precluding Kenville Edwards's prior medical records. He claims, without any support or citation to the record, that these records show that Kenville suffered prior physical and emotional injuries similar to those claimed in this case. Since this argument is completely unsubstantiated in the motion, and upon the Court's review of the evidence has no basis in fact, it will be rejected.

### g. *Evidence of officers' statements during the incident*

Finally, Officer May challenges the Court's ruling to admit testimony of racial epithets and profanity made by the defendant officers.[8] He avers that the statements were not relevant to an excessive force inquiry and were highly prejudicial, but does not point to any particular point in the record displaying an allegation of Officer May's use of inappropriate language or make any specific argument as to how that allegation resulted in unfair prejudice. Speaking in generalities, then, the Court finds that any such statements are relevant to an excessive force claim.

While an officer's use of profanity, *alone*, is insufficient to establish a claim of excessive force, *see Pina v. City of Hartford*, No. 07-CV-0657JCH, 2009 WL 1231986, at *8 (D. Conn. Apr. 29, 2009), that is not the case here. Rather, courts have found that an officer's use of profanity or racial slurs are relevant to the overall objective reasonableness of an excessive force inquiry. *See Doye v. Colvin*, No. CV408-174, 2008 WL 5749909, at *3 (S.D. Ga. Dec. 4, 2008), *report and recommendation adopted,* No. CIV. A. 408-174, 2009 WL 936294 (S.D. Ga. Apr. 7, 2009) (noting that while claims of verbal discrimination themselves are not cognizable under Section 1983, the allegations are relevant to an excessive force claim); *Seals v. Mitchell*, No. CV 04-3764 NJV, 2011 WL 1399245, at *13 (N.D. Cal. Apr. 13, 2011) (explaining that evidence of an officer's racial slurs were relevant to the plaintiff's excessive force claim "to assess the objective reasonableness of [the officer's] use of force and to [the plaintiff's] request for punitive damages.").

Further, any such statements are not hearsay. *See Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1004–05 (S.D.N.Y. 1997) (reasoning that records containing racial epithets were not

---

[8] The Court also ruled that any such statements made by non-party officers would be inadmissible.

hearsay "because they are not relied on to prove the truth of the matter asserted, but only to show that the statements were made."). Rather, any such statements would be non-hearsay admissions by a party opponent. *See id.* (citing Fed.R.Evid. 801(d)(2)(A)).

Finally, the jury instructions clearly state that verbal abuse or rudeness do not in and of themselves constitute a constitutional violation. [Doc. # 165 at 14]. There is no error.

### 3. Jury Instructions

Officer May also challenges the Court's refusal to include some of his proposed instructions in the jury charge. Specifically, the Court excluded the following proposed instructions:

1) "[v]erbal harassment or threats alone do not constitute a violation of any federally protected right, including the Fourth Amendment, and may not form the basis of the plaintiffs' claim for excessive force."
2) "The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."
3) "Citizens have both duties and rights. Some of my instructions to you concern certain rights held by all citizens. However, citizens also have duties in a society based on laws. Citizens are required to obey the lawful commands of a police officer while he or she is performing his or her official duties. A person may not disregard or ignore an officer while in the performance of his official duties and may be guilty of a crime for such conduct."
4) "A person does not have a right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee."
5) "Use of force such as palm strikes, use of an arm bar, striking or use of a baton, has been deemed reasonable under circumstances where suspects are kicking, flailing their arms, struggling with officers, and/or resisting officers' attempts to place them in handcuffs."

A jury charge "is erroneous if the instruction misleads the jury as to the proper legal standard, or it does not adequately inform the jury of the law." *Luciano v. Olsten Corp.*, 110 F.3d 210, 218 (2d Cir. 1997). When a jury charge is challenged, the court "reviews jury the jury instructions as a whole," and will "not upset a judgment because of an error

in jury instructions if the charge actually given was correct and sufficiently covered the essential issues." *Id.* (citing *BAII Banking Corp. v. UPG, Inc.,* 985 F.2d 685, 696 (2d Cir.1993)). A new trial shall not be granted unless, "taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law." *Id.* If an instruction is erroneous, a new trial will not be granted if the error was harmless. *Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10CV1827 JBA, 2014 WL 3895905, at *4 (D. Conn. Aug. 8, 2014) (citing *United States v. Bah,* 574 F.3d 106, 114 (2d Cir. 2009)). "An error is harmless only if the court is convinced that the error did not influence the jury's verdict." *Id.* (citing *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir. 2000)).

As to the first proposed instruction, this instruction was not necessary in this case; Kenville Edwards's claim did not rest on verbal harassment or threats alone. In fact, it was undisputed that Officer May used physical force. And, as set forth above, the jury instructions explain that verbal abuse or rudeness do not in and of themselves amount to a constitutional violation. [Doc. # 165 at 14]. Accordingly, the failure of the Court to include defense counsel's precise proposed language will not be grounds for a new trial.

The second proposed instruction was sufficiently addressed by the charge given to the jury. The jury was instructed as follows:

> It is not necessary for a plaintiff to prove that the defendants had any specific intent to deprive him or her of a constitutional right in order to prevail. Instead, a plaintiff is entitled to relief if the defendants intended the actions or inaction which resulted in the violation of the plaintiff's rights, or if the defendants acted in reckless disregard of the plaintiff's rights. An act is intentional if it is done knowingly; that is, if it is done voluntarily and deliberately, and not because of accident, mistake, negligence, or other innocent reasons. An act is done recklessly if it is done in conscious disregard of its known probable consequences; that is, not caring whether the plaintiff's rights were being violated. On the other hand, an officer's good intentions will not make the use of excessive force constitutional.

[Doc. # 165 at 16]. This language adequately informs the jury of the law. *See Luciano*, 110 F.3d at 218.

With respect to the third, fourth, and fifth proposed instructions, Officer May contends that this trial involved a situation where a suspect was legally under arrest, but did not yield to the commands of the officer, and so the officer needed to use a certain level of force to place him into custody. The proposed instructions, Officer May argues, would have adequately informed the jury that citizens are required to obey lawful commends of a police officer. What was at issue in this case – and what the jury charge clearly addressed – what whether the force used in light of the plaintiff's resistance was reasonable. The charge makes clear that the use of force must be proportionate to the resistance being offered. Specifically, the charge instructs as follows:

> The determination of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. Therefore, in examining the plaintiffs' claim that excessive force was used against them, you must look at the situation from the perspective of a reasonable officer on the scene at that moment, taking into consideration all the circumstances which you find to have existed at the time, as the officer reasonably could have perceived them to be. If an officer reasonably, but mistakenly, believed that the amount of force used was necessary under the circumstances, the officer would be justified in using more force than in fact was needed. The question is whether the officer's conduct was within a reasonable range of appropriate police responses. It is the plaintiffs' burden to prove that it was not. The use of force by a police officer must be proportionate to any resistance being encountered. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened against the officer.

[Doc. # 165 at 15]. The instructions, as a whole, did not give a misleading impression of the law. *See Luciano*, 110 F.3d at 218.

In all, the Court will not, in its sound discretion, order a new trial; the jury's verdict is simply not against the great weight of the evidence.

## **Conclusion**

For the reasons stated above, Officer May's Motion for Judgment as a Matter of Law and Motion for a New Trial are denied.  The verdict in favor of Kenville Edwards is sustained.  The amount of punitive damages is reduced as stated above.

SO ORDERED, this  28th  day of November, 2017, at Bridgeport, Connecticut.


   /s/ *William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge